HERMAN BODEN ET AL., APPELLANTS, V. RENA MIER ET AL., APPELLEES.

FILED FEBRUARY 17, 1904.   No. 13,288.

1. **Nonresidents: SERVICE OF PROCESS.** Section 22, chapter 20, Compiled Statutes, provides: "All writs, notices, orders, citations and other process, * * * may be served in like manner as a summons in a civil action in the district court," and that "in cases where writs, notices, citations or other process can not be served as aforesaid in this state, the probate court may, in cases where it may be necessary, order the service thereof to be made by publication in some newspaper in this state in such manner as the court may direct." *Held*, That this section does not authorize the county court to order personal service on a nonresident minor, in proceedings had to vacate a judgment or order of such court in probate proceedings, no affidavit that service can not be made in this state being on file.

2. **Constructive Service: AFFIDAVIT.** Personal service, outside the state, in pursuance of section 81 of the code, is a nullity in the absence of an affidavit for service by publication.

3. **Jurisdiction.** Where jurisdiction has not been obtained by due service of process, a court acquires no jurisdiction over minor defendants by the appointment of a guardian *ad litem*, and the filing of an answer by such guardian.

4. **Advancements: PROOF.** Section 34, chapter 23, Compiled Statutes, provides: "All gifts and grants shall be deemed to have been made in advancement, if they are expressed in the gift or grant to be so made, or if charged in writing by the intestate as an advancement, or acknowledged in writing as such by the child or other descendant." In an action to adjust advancements, *held*, that oral testimony is incompetent to prove the advancements.

5. **Estate: DISTRIBUTION.** In the distribution or partition of an estate, a debt due the estate from a distributee, or some person through whom he inherits by right of representation, which is barred by the statute of limitations, can not be deducted from the share of such distributee.

6. **Guardian ad Litem: DUTIES.** The appointment of a guardian *ad litem* is not a mere matter of form, nor are his duties merely perfunctory; he should prepare and conduct the defense of his wards with the same care and skill as though acting under a retainer.

APPEAL from the district court for **Saline** county: GEORGE W. STUBBS, JUDGE. *Affirmed.*

*F. I. Foss* and *R. D. Brown,* for appellants.

*A. S. Sands* and *J. H. Grimm,* contra.

ALBERT, C.

In March, 1900, Henry A. Boden died intestate leaving three children who are the appellants, and three grandchildren the issue of Albert H. Boden, a son who had died about a year before, who are the appellees, as his sole and only heirs at law. The grandchildren are under the age of 14 years.

Herman Boden, a son of the intestate, was appointed administrator of the estate, which appears to have been fully settled and closed up in the county court of Saline county sometime previous to the 19th day of April, 1901.

On the date last mentioned, the administrator filed a petition in that court alleging that, on the 1st day of January, 1889, the intestate had advanced the sum of $250 to his son Albert, in anticipation of his share in the estate of the intestate, and as evidence thereof the latter had executed his note to the intestate on said date for that amount, payable with interest one year after date; that on the 7th day of December, 1894, the intestate, in discharge of a certain debt of his son Albert to a third party, had executed his two notes to such third party, each for the sum of $1,570, payable respectively January 1, 1897, and Janu-

ary 1, 1898, after date; that none of said notes were paid during the lifetime of the deceased, but that the administrator, on the — day of June, 1890, had paid the sum of $3,006.48, the amount then due on the last two notes, in discharge thereof; that by reason of his inexperience and lack of counsel he had made such payment, although said notes had never been allowed as claims against the estate of the intestate, and for the same reason neither they, nor the note for $250 given as evidence of the advancement hereinbefore mentioned, had been reported or taken into account in the final settlement of the estate. It was also alleged that the widow of Albert H. Boden and his said children resided in the state of Colorado. The relief sought was that the estate be "opened up"; that he be credited with the amount paid by him in discharge of the two notes executed by the intestate to a third party, as aforesaid; and that the amount of the three notes be charged against the share of the estate going to the children of Albert H. Boden, as an advancement made to him by the intestate.

The county court set a time for hearing the petition, and issued process for service on the children of Albert H. Boden, and at the same time, in writing on the writ "specially deputized" Mr. B. V. Kohout to serve the same on said children and their guardian in the state of Colorado or elsewhere without this state. Mr. Kohout made service of the writ in Colorado and made return under oath.

The county court appointed a guardian *ad litem* for said children who answered on their behalf. Upon what appears to have been an *ex parte* hearing, the court granted the prayer of the petition, allowing the administrator the credit prayed, and charging the share of the children of Albert H. Boden with $4,372.18, the amount of the three notes, as an advancement made to their father in his lifetime.

Afterward Herman Boden, the administrator, in his own behalf, brought an action in the district court against all the other heirs of his father for the partition of certain

lands which were a part of the estate. In his petition he asked that the amount charged by the county court against the share of the children of Albert H. Boden be made a charge against their interest in the lands sought to be partitioned. These children were represented by guardians *ad litem,* who denied the jurisdiction of the county court to adjust the alleged advancements, and denied that the amount thus charged, or any portion thereof, was chargeable as an advancement against the share of the estate going to such children. The district court decreed a partition of the land, but refused to charge the alleged advancements against the share of the children. The other heirs appeal.

But two questions are presented by the appeal: (1) Had the county court jurisdiction in the proceedings had, to open the estate and adjust the alleged advancements? (2) If not, then should the district court have adjusted and allowed the advancements in the partition suit?

The record of the proceedings had in the county court previous to the filing of the petition to open up the estate and adjust the advancements is not before us. But the allegations and the prayer of the petition, as well as the proceedings had thereon, presuppose the existence of a decree of distribution and a final settlement of the estate; and the present case was tried in the district court, and argued in this court, on the theory that, after the petition for opening up the estate and for the adjustment of the advancements had been filed, service of process, or what would be equivalent thereto, was necessary to vest the county court with jurisdiction in the premises.

The appellants first contend that the county court acquired such jurisdiction by the service made on the appellees by Mr. Kohout, and insist that this contention is supported and established by section 22, chapter 20, Compiled Statutes (Annotated Statutes, 4806), which is as follows:

"All writs, notices, orders, citations, and other process, except in proceedings for contempt, may be served in like

manner as a summons in a civil action in the district court, and the service of the same by a copy thereof, left at the usual place of residence of the party to be served, shall be deemed equivalent to personal service thereof in cases where personal service is required by law; but to bring a party into contempt there must have been actual personal service of the process upon the disobedience of which the contempt is founded, and there must be actual personal service of all process in the proceedings for contempt. In cases where writs, notices, citations, or other process can not be served as aforesaid in this state, the probate court may, in cases where it may be necessary, order the service thereof to be made by publication in some newspaper in this state in such manner as the court may direct, and thereupon the same proceedings may be had as if such writs or other process had been served as aforesaid in this state. Nothing contained in this section shall limit or take away the power of the probate court or judge thereof to give notice or cause the same to be given by publication in the various cases provided by law."

The construction which the appellants would place on that section is shown by the following taken from their brief:

"It will be seen from the foregoing that the method of the service of writs, notices, etc., outside of the state is left entirely to the discretion of the county judge. He may have the notice served by publication when in his judgment 'it may be necessary,' but he is not required to employ this method."

We do not think the section will bear that construction. It contemplates two classes of cases: Those where service in the manner prescribed may be had in this state, and those where it can not. It not only provides how service "may" be made in the latter class of cases, but also how it "may" be made in the former. If, as the appellants claim, the provisions as to service in the latter should be held directory or permissive because of the auxiliary "may," then the provisions as to service in the former

should also be held directory or permissive for the same reason. In other words, that the entire section is merely directory, and in any probate matter the manner of service of process, original or otherwise, "is left entirely to the discretion of the county judge." That it was not the intention of the legislature to leave the manner of service of process in any such state of uncertainty seems too clear to admit of argument. The section should be read and understood, we think, precisely as though the legislature had used the term shall instead of may, and should be held to be no less mandatory. The section, thus construed, does not authorize service to be made outside the state in any other manner than by publication in some newspaper within the state. It is unnecessary to determine whether service might have been made in this case in pursuance of section 81 of the code, which provides for personal service without the state in cases where service may be had by publication, because it is admitted that no affidavit for service by publication was filed. Valid service in pursuance of such section can only be made after filing such affidavit. *Atkins v. Atkins,* 9 Neb. 191; *McGavoc v. Pollack,* 13 Neb. 535; *Rowe v. Griffiths,* 57 Neb. 488; *Albers v. Kozeluh,* 68 Neb. 522. Personal service outside the state, at best, is only a form of constructive service. *Anheuser-Busch Brewing Ass'n v. Peterson,* 41 Neb. 897. That the requirements of a statute authorizing constructive service must be complied with in every material respect is elementary. Works, Courts and their Jurisdiction, p. 266, sec. 38; Alderson, Judicial Writs and Process, p. 313, sec. 142. That the service made by Mr. Kohout was not a substantial compliance with the provisions of the statute requiring service by publication in some newspaper is obvious, and was therefore ineffective. In *Hughes v. Housel,* 33 Neb. 703, the court say: "When the record of a cause, in which a judgment is rendered against a minor, discloses that the mode pointed out by the statute for obtaining jurisdiction had not been followed, the judgment is void on its face." In this case the

mode pointed out by the statute was wholly disregarded, and one not recognized adopted. It is not therefore a case of defective service, but of no service, and the proceedings predicated thereon are not voidable, but absolutely void, so far as affects the rights of the children of Albert H. Boden.

It is next contended that the county court acquired jurisdiction by the appointment of a guardian *ad litem* for the appellees, and the filing of an answer by him in their behalf. There are authorities which support this contention, but we think the better considered cases are against it. *New York Life Ins. Co. v. Bangs*, 103 U. S. 435; *Roy v. Rowe*, 90 Ind. 54; *Chambers v. Jones*, 72 Ill. 275; *Good v. Norley*, 28 Ia. 188; *Frazier & Tulloss v. Pankey*, 1 Swan (Tenn.), 75.

The appellants next insist that, even were the county court without jurisdiction to adjust the alleged advancements, it was within the jurisdiction of the district court to adjust them in the partition suit. There is no doubt that the district court, in a proper case, may adjust advancements in a suit for the partition of land. *Schick v. Whitcomb*, 68 Neb. 784.

But, while the three notes are frequently referred to in the argument as advancements, there is no competent evidence in the record that they or any of them were in fact such. In order that a gift or grant shall be deemed an advancement, it must be expressed in the gift or grant to be so made, charged in writing by the intestate as an advancement, or acknowledged in writing as such by the child or other descendant. Section 34, chapter 23, Compiled Statutes (Annotated Statutes, 4934). That section by implication excludes parol evidence of an advancement. *Pomeroy v. Pomeroy*, 93 Wis. 262; *Bulkeley v. Noble*, 2 Pick. (Mass.) 337; *Bullard v. Bullard*, 5 Pick. (Mass.) 527; *Barton v. Rice*, 22 Pick. (Mass.) 508. The evidence relied upon in this case as showing that the notes, or any of them, were intended as advancements is exclusively parol, and, as we have seen, wholly incompetent for that purpose.

The alleged advancements then were, at best, no more than mere debts due the estate from the estate of the deceased father of the appellees. There is no doubt that in a proper case debts due the estate from the distributee, or the party from whom he claims by right of representation, may be deducted from his share of the estate. *Bowen v. Evans,* 70 Ia. 368; *Blackler v. Boott,* 114 Mass. 24; *Earnest v. Earnest,* 5 Rawle (Pa.), 213; *Girard Life Ins Co. v. Wilson,* 57 Pa. St. 182; *Snyder v. Warbasse,* 11 N. J. Eq. 463. The English courts hold that this rule applies even to debts barred by the statute of limitations, and that view has been adopted by the courts of some of our own states. But we think the better doctrine is that it does not apply to such debts. As was said in *Holt v. Libby,* 80 Me. 329:

"In many instances such claims are covered by the dust of time and forgotten, though found by executors after the death of testators. In many other instances the advances are intended as benefactions and gifts, conditioned on some unforeseen circumstance arising to make it expedient to regard them as debts." See, also, *Wadleigh v. Jordan,* 74 Me. 483; *Allen v. Edwards,* 136 Mass. 138; *Reed v. Marshall,* 90 Pa. St. 345; *Milne's Appeal,* 99 Pa. St. 483.

The note of $250 was due January 1, 1890, and was barred long before the death of either the payee or payor. The other two notes, as we have seen, are alleged to have been given on the 7th day of December, 1894, by the intestate in discharge of a certain debt, which his son Albert, father of the appellees, owed to a third party. The evidence as to that transaction is exclusively parol, and is to the effect it was agreed between the father and son that, in case the latter failed to repay the amount during the lifetime of the intestate, it should be deducted from his share of the estate. This evidence shows that immediately upon the giving of such notes, the father of the appellees became indebted to the intestate in the amount of the debt thus discharged, and the right of action accrued thereon that instant. The stipulation that such indebtedness should be deducted from the debtor's share of the intes-

tate's estate would not prevent the running of the statute, nor change the debt into an advancement. It is clear, therefore, that the entire indebtedness sought to be charged against the appellees was barred by the statute of limitations, and the court properly refused to enforce it against their share of the estate.

What has been said disposes of this appeal; but it may not be out of place to call attention to a matter not necessary to a decision. On the trial the gentleman who had been appointed guardian *ad litem* in the county court testified that the hearing on the petition to open up the estate and charge the advancements was set for one o'clock of a certain date; that he appeared in the county court at 1:30 o'clock of such date, and was informed by the county judge that the hearing on the petition had been closed; he then called the attention of the county judge to the answer which he had previously filed on behalf of the minors, and informed him that he did not think the petitioners were entitled to the relief asked; whereupon the county judge remarked that he examined into the matter, and was satisfied that the relief prayed should be granted. The foregoing shows to what extent the minors were represented in the county court. It also shows, we think, not only unseemly haste on the part of the county judge in the disposition of an important matter, but that both he and the learned gentleman who acted as guardian *ad litem* fell into a common error, namely, that the appointment of a guardian *ad litem* is a mere matter of form, and his duties purely perfunctory. Such is by no means the case. He should prepare and conduct the defense of his wards with as much care as though acting under a retainer. Any lower standard finds no justification either in law or the ethics of the profession.

It is recommended that the decree of the district court be affirmed.

BARNES and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.